UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLIE WATKINS, DIN 00-B-1316,

       Petitioner,

       -v-                                             03-CV-0711(MAT)

                                                             **ORDER**

JOHN T. BURGE, Superintendent
of Auburn Correctional Facility,

       Respondent.

_____

**INTRODUCTION**

Petitioner Charlie Watkins has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court on one count each of Rape in the First Degree (N.Y. Penal Law § 135.35[1]), Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65[1], Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[1]), Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal L. § 265.02[2]), Unlawful Imprisonment in the First Degree (Penal Law § 135.10), and Menacing in the Second Degree (Penal Law § 120.14[1].[1]

**FACTUAL AND PROCEDURAL HISTORY**

This conviction stems from an incident that occurred on July

---

[1] This matter has been re-assigned to the undersigned.

7th, 1999. At approximately 1:15 a.m., Keisha Lane ("Lane") was walking down Broadway Street in the City of Buffalo toward her house when she met an acquaintance, Charlie Watkins ("Watkins" or "petitioner"). T. 9-10.[2] Lane approached Watkins, asking him for a cigarette. T. 11. Watkins said that he had one at his house, and invited Lane to walk there with him. T. 11. While Lane was waiting for the petitioner on the front porch, Watkins went inside the house, and returned with a knife in his hand, which he held to Lane's throat while he forced her inside, demanding she take off her clothes. T. 13-15. Lane refused, and Watkins put the knife to her throat again and forcibly removed her clothes. T. 15-16. Lane testified that Watkins then "got on top of me, put his penis inside my vagina." T. 18.

During intercourse, Watkins paused, got up, and went outside the house for two to three minutes. T. 20, 48. According to Lane, the petitioner returned inside the house and penetrated her again. T. 20, 46. Approximately 20 minutes after the rape had started, Watkins got up and went outside the house a second time. Lane then ran from the house, unclothed, to summon help. She used a neighbor's phone to call the police. T. 21-22.

A bench trial was held before Justice Mario J. Rossetti in Erie County Supreme Court, which concluded on March 8, 2000. The judge read his verdict into the record during which petitioner was

---

[2] Citations to "T.__" refer to the Trial Transcript.

2

present with his attorney and co-counsel on March 22, 2000. The petitioner was found guilty on all counts. He was subsequently sentenced on June 2, 2000 to concurrent, determinate terms of imprisonment, the longest of which was fifteen years. Watkins raised only one issue on appeal of his conviction to the Appellate Division, Fourth Department: that he had been deprived of his state constitutional rights to be tried on charges determined by a grand jury and to have fair notice of the accusations against him. Petitioner's ("Pet'r") Appellate Br. 8-12. The basis for this argument was that Lane's testimony recounted two separate incidents of rape, and because Watkins was convicted on one count of first-degree rape, the prosecution failed to specify which of the two acts the first-degree rape count was intended to encompass. The Appellate Division, Fourth Department, rejected this contention, concluding that the "briefly interrupted act of sexual intercourse was 'part and parcel of the continuous conduct' that constituted one act of rape", and that the indictment provided Watkins with notice of the first-degree rape charge. People v. Watkins, 300 A.D.2d 1070 (4th Dept. 2002)(quoting People v. Grant, 108 A.D.2d 823 (2d Dept. 1985). Leave to appeal to the New York Court of Appeals was denied. People v. Watkins, 99 N.Y.2d 659 (2002).

Watkins then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, his petition is denied.

**DISCUSSION**

**A. Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court

5

proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement and Procedural Bar**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

The Second Circuit has held that there are several ways a petitioner may apprise the state court of a constitutional claim without "citing chapter and verse of the Constitution." Daye, 696 F.2d at 194.  A petitioner may alert the state court to a claim's

constitutional nature by "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Id.

"For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir.1997) (quotations omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991). Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. E.g., Grey, 933 F.2d at 120-21; Reyes v. Keane, 118 F.3d at 139.

For a procedurally defaulted claim to be heard on habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. 722, 748-50 (1991)).

**C. The Habeas Petition**

In grounds one and two of his petition, Watkins contends that he was denied his right to be tried on those charges determined by the Grand Jury, as well as his right to fair notice of the charges against him. Petition ("Pet.") ¶ 12(A)-(B). Watkins's claims are based on the fact that the indictment contained one count of Rape in the First Degree, but the proof in the Grand Jury and at trial (Lane's testimony) allegedly established two acts of rape.

Respondent argues that Watkins failed to exhaust this argument in the state courts because it was raised on direct appeal as a matter of state constitutional law and not federal law. Respondent's ("Resp't") Mem. at 3-4; see Pet'r Appellate Br. 8-12. When the petitioner presented his claim on direct appeal, it was framed only as a violation of New York State's Constitution and statutory law. See Pet'r Appellate Br. 8-12. Although Watkins cites U.S. Const. Amend. 5 and 14 in his Reply Brief on direct appeal, this alone cannot fairly apprise the state courts of his claim.[3] See Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) ("Under New York law a claim of error first raised in a reply brief is not properly presented to the reviewing court."); Rustici v. Phillips, No. 07-3789-pr 2009 WL 159262 (2d Cir. Jan. 23,

---

[3] The heading of Point 1 of petitioner's Reply Brief to the Appellate Division reads, "Appellant was deprived of his fundamental constitutional right to be tried on charges determined by a grand jury and to have fair notice of the accusations against him (US Const., Amends. 5, 14; NY Const., Art. I § 6). The body of his argument provides no federal constitutional basis for this claim. Pet'r Reply Br. 3-5.

8

2009)(Summary Order). Because petitioner's Fifth and Fourteenth Amendment claims were not fairly presented to the state court on direct appeal, Watkins cannot now collaterally attack his conviction in state court on those grounds. See N.Y. Crim. Proc. Law § 440.10(2)(c).[4] As the petitioner no longer has remedies available in the state courts, his claims are deemed exhausted and procedurally barred. Watkins has not attempted to show "cause" and "prejudice" resulting from the procedural default, nor has he made a claim of actual innocence. Accordingly, habeas review of his claims is foreclosed.

Assuming, *arguendo*, that Watkins exhausted his state court remedies, his claims are nonetheless without merit. It is well-settled that the right to indictment by a Grand Jury is not applicable to the states. Alexander v. Lousiana, 405 U.S. 625, 633 (1972). However, courts in this circuit have recognized that a variance between an indictment and proof at trial may be a cognizable issue in a habeas corpus petition by implicating double jeopardy and due process protections:

> [T]he general rule that an accusatory allegation, such as an indictment, and proof at trial must correspond rests not only upon

---

[4] "[T]he court must deny a motion to vacate a judgment when . . .[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him". N.Y. Crim. Proc. Law § 440.10(2)(c).

> the grand jury clause of the Fifth Amendment, but also on the requirements (1) that the accused be protected against another prosecution for the same offense; and (2) that the accused be informed of the charges against him, so that he may present his defense without being taken by surprise by evidence offered at trial.

United States ex rel. Richards v. Bartlett, No. CV-92-2448, 1993 WL 372267 (E.D.N.Y. Sept. 9, 1993)(internal citations omitted); see generally, Archie v. Strack, 378 F.Supp.2d 195 (W.D.N.Y. 2005); Chandler v. Moscicki, 253 F.Supp.2d 478 (W.D.N.Y. 2003).

A variance in an indictment occurs where "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001). "A variance is immaterial-and hence not prejudicial-'where the allegation and proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense.'" U.S. v. Mucciante, 21 F.3d 1228 (2d Cir. 1994) (quoting United States v. Heimann, 705 F.2d 662, 669 (2d Cir. 1983)). Even if the facts alleged in an indictment vary from the proof offered at trial, absent prejudice to the defendant, any error would not warrant habeas relief and is subject to the harmless error rule. Archie, 378 F.Supp.2d at 199-200.

In the present case, there is no variance, let alone a

prejudicial one, between the indictment and the proof offered at trial. Watkins was adequately apprised of the criminal charges against him, and he cannot demonstrate that the Appellate Division's holding was contrary to, or involved an unreasonable application of, clearly established Federal law under Williams v. Taylor, 529 U.S. 412-13.

**CONCLUSION**

For the reasons stated above, Watkins's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Watkins has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   July 20, 2009
         Rochester, New York